```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE EASTERN DISTRICT OF PENNSYLVANIA


KEVIN O. RICE,                       :
                                     :
            Plaintiff,               :   CIVIL ACTION
                                     :
    vs.                              :   No. 05-cv-6075
                                     :
GARY REYNOLDS, M.D.;                 :
P.A. ZORILLA; P.A. MARTINEZ;         :
P.A. BOKHARI; TROY LEVI;             :
and THE FEDERAL BUREAU OF PRISONS,   :
                                     :
            Defendants.              :
```

**MEMORANDUM and ORDER**

Joyner, J.                                      March 26, 2009

Before this Court is Defendants', Zorilla, Martinez, Bokhari and Levi's, Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. No. 85), Plaintiff's Response in Opposition (Doc. No. 97), and Defendants' Reply thereto (Doc. No. 98). For the reasons set forth in the following memorandum, the motion is granted.

**Background[1]**

Plaintiff, at the time in question, was a inmate with the

---

[1] As this is a motion to dismiss, we will view the facts in the light most favorable to the non-moving party. Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Additionally, it should be noted that the Second Amended Complaint incorporated all allegations from the Original Complaint. Hence, the facts alleged by plaintiff are encompassed in the Original Complaint and the Second Amended Complaint. Plaintiff has also submitted a document entitled "A Statement of Facts Not Believed to Be in Dispute." As this is a motion to dismiss, and this Court declines to convert it to a Motion for Summary Judgment, this Court looks *only* to the pleadings and documents "integral to or explicitly relied upon in the Complaint." In re Rockefeller Sec. Lit., 184 F.3d 280, 287 (3d Cir. 1999). Thus, the "Statement of Facts," as well as documents submitted as exhibits with defendants' Motion to Dismiss, have not been considered in rendering judgment on the instant Motion to Dismiss.

1

Federal Bureau of Prisons, held at the Federal Detention Center ("F.D.C.") in Philadelphia, PA. Defendants Zorilla, Martinez, Bokhari and Levi were employed by the BOP at the time of the Plaintiff's allegations. Plaintiff also alleged violations against the Bureau of Prisons and Dr. Gary Reynolds; however, the instant Motion to Dismiss has been brought only by Defendants Zorilla, Martinez, Bokhari and Levi in their individual capacities.[2] In this Bivens action, plaintiff has alleged violations of the First, Fifth and Eighth Amendments in connection to the medical treatment he received at the F.D.C.[3,4]

In December of 2004, plaintiff fell while getting down from the top bunk of his bed, injuring his leg and back and causing him great pain. On that same day, he told a corrections officer of his pain and put in a sick call slip. That night, the pain worsened and Mr. Rice called the shift corrections officer who informed him that he would have to wait until the next day to receive medical care. The following day, Mr. Rice was not seen,

---

[2] Claims against all defendants in their official capacities were dismissed. See Rice v. Reynolds, No. 05-6075 (E.D. Pa. March 17, 2009) (Order dismissing claims against defendants in their official capacities). The remaining defendants filed separate Motions to Dismiss.

[3] While plaintiff alleges violations of 42 U.S.C. § 1983, this Court treats the violations as those under Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), as the defendants are not state, but federal actors. See Egervary v. Young, 366 F.3d 238, 246 (3d Cir. 2004).

[4] In its statement of jurisdiction in the Second Amended Complaint, plaintiff mentions the Fourteenth Amendment as a basis for this Court's jurisdiction; however, the Fourteenth Amendment is not mentioned elsewhere in the Complaint, is not mentioned in the original Complaint and no violations of the Fourteenth Amendment have actually been alleged. As there has been no claim made in the Complaint under the Fourteenth Amendment, we will not address it.

though he had placed his name on the call out sheet for sick call. Several days went by and Mr. Rice told another corrections officer of the injury and the pain, but was told that he could not see anyone until after the holiday weekend. Later, when walking back from the visitation area after a visit, his leg gave out. A Unit Counselor and a Unit Manager saw him on the floor and told him that they would call the hospital. Later that day, he was seen by Dr. Reynolds for the first time. Dr. Reynolds spent approximately five (5) minutes with him and told him he had to get to a New Year's Eve party. Dr. Reynolds told Mr. Rice that he might have a pulled muscle and wrote out an idle slip and a lower bunk slip. He also wrote Mr. Rice a prescription for 400 mg Ibuprofen.

When Mr. Rice returned to his Unit, he could not receive a bottom bunk because the Unit Counselor was not there and could not receive the pain medication because the pharmacy was closed until the next week due to the holiday. Mr. Rice received a lower bunk three or four days later and his pain medication approximately one week later. Mr. Rice was also given the use of a wheelchair during this time. During the week after the exam, Mr. Rice was in severe pain and he asked his cell mate to press the emergency call button on a number of occasions. In early January 2005, while Mr. Rice was showering, his leg gave out and he was knocked to the floor. He was screaming in pain and a

Physician Assistant ultimately called Dr. Reynolds at home who told the P.A. to inject Mr. Rice with 30 cc of cortisone. The shot helped for a brief period of time, but then wore off, leading Mr. Rice to again push the emergency call button.

The next day, P.A. Smith came to Mr. Rice's cell because Mr. Rice could not get out of bed. Mr. Rice informed P.A. Smith that he could not even get out of bed to use the toilet and was urinating into an empty milk container. Later that evening, P.A. Smith gave Mr. Rice 2 Tylenol codeine 3 for the pain. The following day, Mr. Rice was still experiencing pain and P.A. Smith visited again and gave Mr. Rice pain medication.

The next day, Mr. Rice was still experiencing a lot of pain and pressed the emergency button. Dr. Reynolds came to Mr. Rice's cell, along with Mr. Freeman, Unit Counselor. Once there, Dr. Reynolds took away the wheelchair and told Mr. Rice to get out of bed. When Mr. Rice told him that he could not due to the pain, Dr. Reynolds told him that he had to get out of bed or would receive an incident report and be placed in the special housing unit. When Mr. Freeman attempted to help Mr. Rice get out of bed, he was stopped by Dr. Reynolds. While Mr. Rice attempted to pull himself out of bed, he was crying and complaining of the pain. Dr. Reynolds then told Mr. Rice to put on his jumpsuit and when Mr. Rice told Dr. Reynolds that it would be too painful, Dr. Reynolds threatened again to put him in the

4

special housing unit.  Eventually, Mr. Rice was able to put on the jumpsuit and get into a wheelchair to go to the examination room.  Once there, Dr. Reynold told Mr. Rice to get on the weigh scale and then pulled him out of the wheelchair onto the scale when Mr. Rice protested due to pain.  Dr. Reynolds then asked for an x-ray of plaintiff's right leg.  Ms. Macalusco performed the x-ray.  Dr. Reynolds then took plaintiff's wheel chair, gave him crutches and kept him on the same medication despite plaintiff's request to change.  For much of January 2005, plaintiff submitted sick call requests and, finally, wrote the "Acting Warden."  A few days later he was brought to the exam room and was examined by P.A. Zorilla and P.A. Martinez.  Zorilla changed his pain medication to Indomethacin 50 mg.  For the next month, plaintiff continued to experience pain and submitted numerous sick call requests.  In February 2005, plaintiff submitted an administrative remedy (BP 8) to his Unit Counselor concerning the pain and his lack of treatment.  No changes were made.

In March 2005, Mr. Rice saw a P.A. who changed his medication to Naproxein 50 mg.  In April 2005, plaintiff again saw Dr. Reynolds and told him about the continued pain and headaches that plaintiff had been having.  Dr. Reynolds took plaintiff's blood pressure and, finding that it was high, changed plaintiff's medication to Acetaminophen 500 mg, explaining that the Naproxein could be responsible for the high blood pressure.

Dr. Reynolds then told the plaintiff that he had a really bad pulled muscle or nerve damage and that he was recommending "Electro-Diagnostic" testing. Plaintiff continued to have pain after the visit and continued to submit sick call requests. Plaintiff was seen by P.A. Bokhari in May 2005 and was told that he would have to deal with the pain and that there was nothing he could do.

Finally, plaintiff saw Dr. Reynolds in July of 2005. At this time, plaintiff's crutches were taken away before the examination. Plaintiff explained that he was still in pain and could not get around without the supports. Plaintiff then told Dr. Reynolds that he had never received the electro-diagnostic testing that had been ordered. Dr. Reynolds told plaintiff that he was malingering and that if he fell without the crutches that he would get an incident report and be put in the special housing unit. Mr. Freeman came into the room and was told that Mr. Rice could not have the crutches and that if he fell, he was to go to the special housing unit. Mr. Rice then left the examination room by holding onto the walls for support. A few days later, Mr. Rice's leg gave out during lunch time at the Unit Open House in front of staff members and the Assistant Warden. Mr. Rice was told by P.A. Martinez that someone would look into his injury and crutches situation, but has not heard back. Mr. Rice pursued administrative remedies as to the lack of medical treatment

through July 2005, after first filing on February 22, 2005, and has been told that the medical treatment was sufficient.

On December 16, 2005, plaintiff filed his Complaint pro se and then sought, and secured, appointment of counsel from the Civil Rights Panel of the Eastern District of the United States. Counsel was appointed by Order on January 11, 2006. Plaintiff was taken to Frankford Hospital on August 15, 2006, for electro-diagnostic testing where he was preliminarily found to be suffering from a possible right S1 radiculpathy. The physician there recommended further studies and tests which were not immediately performed. Following an application from counsel and Order from this Court, the plaintiff was examined on or about August 8, 2007, by Dr. Marc Kahn, M.D., an orthopaedic specialist in Cherry Hill, N.J. Dr. Kahn preliminary diagnosed plaintiff with a chronic lumbar strain and sprain and an internal derangement of his right knee. Dr. Kahn also recommended MRI and EMG testing to properly diagnose his injury and determine a course of treatment. The BOP was made aware of this report but did not provide follow up testing.

On October 4, 2007, this Court ordered that the MRI and EMG tests be performed. The MRI was performed at Thomas Jefferson University Hospital; however, the hospital would not release the results of the MRI without an assurance of payment from the BOP. Similarly, the hospital would not perform the EMG test without

7

such assurance.  The BOP has contested the necessity of a court order to pay for such tests, asserting that it has adequate facilities for such tests itself.  The BOP has not, thus far, performed such tests.

The Second Amended Complaint was filed in this matter on June 3, 2008. Defendants Zorilla, Martinez, Bokhari and Levi in their individual capacities now move to dismiss the Second Amended Complaint; the plaintiff has responded in opposition. This Court has jurisdiction over this action pursuant to 13 U.S.C. §§ 1331 and 1343 and claims under the First, Fifth and Eighth Amendments to the U.S. Constitution.

## **Standard**

In response to a pleading, under Federal Rule of Civil Procedure 12(b)(6), a Defendant may assert by motion that the Plaintiff's complaint "[fails] to state a claim upon which relief can be granted."  In analyzing a Rule 12(b)(6) motion to dismiss, we "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citations omitted). "To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level .

. . .'" Id. at 232 (quoting Bell Atl. Corp. v. Twombley, 127 S. Ct. 1955, 1965 (2007)).  In other words, the plaintiff must provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a particular cause of action.  Id. at 234.  In ruling on a Rule 12(b)(6) motion to dismiss, the court may consider documents "integral to or explicitly relied upon in the complaint."  In re Rockefeller Sec. Lit., 184 F.3d 280, 287 (3d Cir. 1999).

## Discussion

**I. Eighth Amendment Claim**

Plaintiff claims a violation of the Eighth Amendment with respect to each of the Defendants.  The Eighth Amendment "requires prison officials to provide basic medical treatment to those [] incarcerated." Anderson v. Bureau of Prisons, 176 Fed. Appx. 242, 243 (3d Cir. 2006) (quoting Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)).  It is well-settled that, "[o]nly 'unnecessary and wanton infliction of pain' or 'deliberate indifference to the serious medical needs' of prisoners are sufficiently egregious to rise to the level of a constitutional violation." Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (quoting White v. Napoleon, 897 F.2d 103, 108-09 (3d Cir. 1990) (quoting Estelle v. Gamble, 429 U.S. 97, 103, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976))).  A claim of medical malpractice is not sufficient for a Constitutional violation and, thus, negligence

9

on the part of a physician will not be considered a Constitutional deprivation. Spruill, 372 F.3d at 235 (citing White, 897 F.2d at 108-09; Estelle, 429 U.S. at 106; Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987). Finally, "'mere disagreement as to the proper treatment' is also insufficient." Spruill, 372 F.3d at 235 (quoting MCCII, 834 F.2d at 246 (citations omitted)). Hence, the standard set out in Estelle to assess medical treatment claims under the Eighth Amendment "requires deliberate indifference on the part of the prison officials and it requires the prisoner's medical needs to be serious." Spruill, 372 F.3d at 235-236 (quoting White, 897 F.2d at 109).

    Thus, to state a claim under the Eighth Amendment, plaintiff must allege a "serious" medical need. Id. Plaintiff alleges that his back injury is sufficiently serious to give rise to his Eighth Amendment claim. He asserts that, in reaction to the pain, he spent many days in his bed, used a milk container for urination for multiple days because he could not get out of bed, could not walk without the aid of a crutch, collapsed in the hallway, the shower and the lunch room, and suffered immense, untreated pain for months. He further alleges that this condition has led to permanent injury. Additionally, he has been preliminarily diagnosed by Dr. Kahn, following an Order from this Court, with a chronic lumbar strain and sprain, as well as an

internal derangement of his right knee.[5]  In <u>Spruill</u>, the plaintiff suffered serious back pain similar to the condition that plaintiff alleges in this case and was allowed to proceed with his claim based on his allegations.  372 F.3d at 236.  Based on Mr. Rice's description of the pain, the numerous emergency calls, the numerous sick call requests, Mr. Rice's inability to walk and get out of bed, the three falls, and the accounts of screaming and crying, we find that, similar to the plaintiff in <u>Spruill</u>, Mr. Rice has alleged a serious injury, satisfying this prong of the standard.

To state an Eighth Amendment claim, a plaintiff must also allege deliberate indifference.  As this is a subjective factor, we will address the allegations against each defendant separately.  Additionally, the Third Circuit in Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988), stated that "a defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." (quoting Parratt v. Taylor, 451 U.S. 527, 537 n.3 (1981)).  Hence, this Court will address the alleged personal involvement of each defendant to assess whether the facts alleged "raise a right to relief above the speculative level."  <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008) (quoting <u>Bell Atl. Corp. v.

---

[5] Dr. Kahn also ordered MRI and EMG testing for diagnosis and treatment.

11

Twombley, 127 S. Ct. 1955, 1965, 167 L. Ed. 929, 940 (2007)).

A. **P.A. Zorilla**

Plaintiff alleges that he saw P.A. Zorilla in January 2005, after he had seen Dr. Reynolds for the second time. Plaintiff was examined by P.A. Zorilla and, in response to plaintiff's request, P.A. Zorilla ultimately changed plaintiff's pain medication. Orig. Comp., 7. Plaintiff contends that this medication was not strong enough for the pain. The claim made by plaintiff against P.A. Zorilla does not rise to the level of deliberate indifference; in fact, P.A. Zorilla changed defendant's medication at his request. Plaintiff has not stated a claim for an Eighth Amendment violation against P.A. Zorilla and, thus, the Eighth Amendment claim against P.A. Zorilla is dismissed.

B. **Health Services Administrator Martinez**

Plaintiff alleges that in January 2005, Martinez was present for an examination with P.A. Zorilla.[6] Orig. Comp., 7. Additionally, plaintiff alleges that in July 2005, Martinez saw plaintiff fall in the lunch room and told him that "he would have someone look into" the injury, but that he did not get a response. Id. Plaintiff has not alleged that Administrator Martinez was involved in plaintiff's medical care in any way. Thus, as in Drumer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993),

---

[6] Plaintiff alleges only that Martinez was present and does not allege that Martinez did or said anything.

12

Martinez cannot be considered "deliberately indifferent simply because [he] failed to respond directly to the medical complaint[] of a prisoner who was already being treated by the prison doctor." As plaintiff has not pled that Martinez was deliberately indifferent to his medical complaint, the Eighth Amendment claim against Martinez is dismissed.

**C. P.A. Bokhari**

Plaintiff mentions P.A. Bokhari once in his Complaint. He alleges that he saw, but was not examined, by P.A. Bokhari in April of 2005. Plaintiff alleges that Bokhari was "arrogant towards" him and that Bokhari told plaintiff that "there was nothing he could do for him." Orig. Comp., 8. In the previous four months, plaintiff had been seen by Dr. Reynolds three times, his pain medication had been changed four times, he had been given a wheelchair and then crutches, and x-rays had been taken. At the specific time that plaintiff saw P.A. Bokhari, his medicine had been changed approximately one month previously and electro-diagnostic tests had been ordered. Plaintiff has not alleged that P.A. Bokhari was deliberately indifferent to plaintiff's medical need by an "intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, and/or denial of reasonable requests for treatment that results in suffering or risk of injury." Latham v. United States, 2009 U.S. App. LEXIS 836 (3d

Cir. Jan. 15, 2009) (citing Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993); Monmouth County Correctional Institutional Inmates (MMII) v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987)).  At the time that plaintiff saw Bokhari, medical care was being provided and a disagreement as to the course of treatment, in this case the type of pain medication, does not rise to the level of deliberate indifference.  See Gerber v. Sweeney, 292 F.Supp.2d 700, 709 (E.D.Pa. 2003).  Thus, plaintiff's Eighth Amendment claim against P.A. Bokhari is dismissed.

**D. Warden Troy Levi**

Plaintiff's Second Amended Complaint names Warden Troy Levi as a defendant in this matter; however, plaintiff does not mention Levi in his Second Amended Complaint outside of the caption.[7]  Upon review of the original Complaint, which did not name Levi as a Defendant in the action, it appears that Plaintiff makes a possible reference to Levi when he asserts that he told a visiting friend, RaeAngel Davis, about his fall and she told him that she would call "the Warden" and "let him know."[8]  Orig. Comp., 5.  Shortly after this visit, plaintiff's leg gave out and he was sent to see Dr. Reynolds for the first time. Additionally, plaintiff alleges that he sent a letter to the

---

[7] Plaintiff's Second Amended Complaint alleges only broadly that "Defendants" have engaged in actions that violated plaintiff's constitutional rights, but does not allege personal involvement of any of the defendants by name.

[8] Plaintiff does not allege that Ms. Davis made this call.

14

"Acting Warden" in January 2005.[9]  However, he then alleges that a few days after he sent the letter, he was seen by a P.A. and his medication was changed.  Hence, Plaintiff has made no allegations specifically against Warden Levi in terms of the medical treatment that he received or did not receive.  Additionally, any references to the Warden in his Complaint are followed with plaintiff receiving some form of medical care.  The Third Circuit has stated that "[i]f a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.  Spruill, 372 at 236 (citing Durmer, 991 F.2d at 69).  Plaintiff was under the care of Dr. Reynolds and other medical staff throughout the period described in his Complaint.  Warden Levi's action, as alleged by plaintiff, do not rise to the level of deliberate indifference and the Eighth Amendment claim against him is dismissed.

**II. Fifth Amendment Claim**

Plaintiff alleges Fifth Amendment Substantive Due Process claims specifically in relation to the medical treatment addressed by his Eighth Amendment claim.  Defendants argue that this claim is duplicative of his Eighth Amendment claim. Pursuant to Albright v. Oliver, 510 U.S. 266 (1994), substantive due

---

[9] It is unclear from plaintiff's Complaint whether the Acting Warden was Warden Levi.

15

process claims are not proper when "a particular provision of the Bill of Rights is directly applicable to the claim."  Goldhaber v. Higgins, 2007 U.S. Dist. LEXIS 72892, at *99-100 (W.D.Pa. September 28, 2007).  "[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."  Cooleen v. Lamanna, 248 Fed. Appx. 357, 362 (3d Cir. 2007) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 843 (1998)).  Plaintiff's claim under the Fifth Amendment appear to concern only his medical care, the same issues that are addressed specifically in his Eighth Amendment claim.  Thus, defendants' motion to dismiss as to plaintiff's Fifth Amendment claim is granted and the claim is dismissed.

**III. First Amendment Claim**

Plaintiff's only First Amendment claim, as stated in the Second Amended Complaint, is an allegation that prison officials transferred him to BOP facilities in Oklahoma and West Virginia in retaliation for his complaints concerning his medical care. Defendants argue first that plaintiff has not exhausted his administrative remedies as to his First Amendment claim because he has not pursued administrative remedies in compliance with the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  The

Supreme Court has clearly stated that PLRA exhaustion is mandatory before an inmate may file an action in this Court. Booth v. Churner, 532 U.S. 731, 738-39 (2001). However, exhaustion has been held to be an affirmative defense and "inmates are not required to specifically plead or demonstrate exhaustion in their complaints." Jones v. Block, 549 U.S. 199, 127 S.Ct. 910, 919-20 (2007). Additionally, the Third Circuit had stated, "[w]e . . . join the many other circuits that have held that failure to exhaust is an affirmative defense to be pleaded by the defendant." Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002). Hence, based on the allegations in the Complaint, it would be inappropriate to dismiss for failure to exhaust at this motion to dismiss stage.

Defendants also argue that plaintiff has failed to allege facts that show the defendants' personal involvement in the constitutional torts raised. See Rode, 845 F.2d at 1207. Plaintiff has not alleged that any of the defendants to the instant motion have made attempts to initiate transfers in retribution for Mr. Rice's claims of medical care. Plaintiff states in his Second Amended Complaint that "[t]he Defendants have further moved Plaintiff from facility to facility within the BOP . . . ." Sec. Amend. Comp., 7. Plaintiff later alleges broadly in relation to his First Amendment claim that "[d]uring the pending of the proceedings leading to the filing of the

instant Amended Complaint, Plaintiff was further moved in such a manner to a BOP facility in Oklahoma and thence to West Virginia. Such movement was not undertaken for provisions of the required or appropriate medical care, but is believed to have been accomplished purely as punishment or retribution for Plaintiff's assertions . . . ." Sec. Amend. Compl., 8. No defendant is alleged to have undertaken the transfers or had any control over transfers from one facility to another. Additionally, other than this broad assertion, no factual allegation as to a causal link between the transfers and Mr. Rice's Complaint. See Sharpe v. Costello, 289 Fed. Appx. 475, 476 n.1 (3d Cir. 2008). As plaintiff has not alleged the personal involvement of any of the defendants in the transfers and liability cannot be predicated on *respondeat superior*, the First Amendment claim against Defendants Zorilla, Martinez, Bokhari and Levi is dismissed.

Because we have concluded that Mr. Rice has not alleged a constitutional violation against Defendant Zorilla, Martinez, Bokhari or Levi, we do not proceed in a qualified immunity inquiry. Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151 (2001)).

**IV. Allegations of Untimeliness**

Finally, plaintiff argues that the instant motion to dismiss

should be denied as untimely because defendants have not responded to discovery requests presented by plaintiffs. However, the cases that plaintiff points to in support of this proposition, Contractors Assoc. of Eastern Penn. v. City of Philadelphia, 945 F.2d 1260, 1267 (3d Cir. 199), and Sames v. Gable, 732 F.2d 49, 51 (3d Cir. 1984), involve summary judgment motions, not motions to dismiss.  As this Court is ruling on this motion as a *motion to dismiss* and relying only on the pleadings and documents "integral to or explicitly relied upon in the Complaint," we will not dismiss the motion to dismiss as untimely.  In re Rockefeller Sec. Lit., 184 F.3d 280, 287 (3d Cir. 1999).[10]

---

[10] Similarly, this Court has ruled on the two parallel motions to dismiss, by the Defendants in their Official Capacities and by Defendant Dr. Reynolds in his individual capacity, and has not relied on documents outside of the pleadings and the documents relied upon in the Complaint.  As plaintiff has incorporated his responses to each motion to dismiss into the present response to the instant motion to dismiss, it should be noted that this Court has not considered exhibits or supplements filed by either party in rendering its decisions on any of the motions to dismiss in this action.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
KEVIN O. RICE,                        :
                                      :
          Plaintiff,                  :   CIVIL ACTION
                                      :
     vs.                              :   No. 05-cv-6075
                                      :
GARY REYNOLDS, M.D.;                  :
P.A. ZORILLA; P.A. MARTINEZ;          :
P.A. BOKHARI; TROY LEVI;              :
and THE FEDERAL BUREAU OF PRISONS,    :
                                      :
          Defendants.                 :
```

**ORDER**

AND NOW, this 26th day of March, 2009, upon consideration of Defendant Dr. Gary Reynold's Motion to Dismiss (Doc. No. 85), Plaintiff's Response in Opposition (Doc. No. 97), and Defendant's Reply thereto (Doc. No. 98), for the reasons set forth in the attached memorandum, it is hereby ORDERED that the Motion is GRANTED. It is further ORDERED that the Second Amended Complaint as to Defendants Zorilla, Martinez, Bokhari and Levi is hereby DISMISSED.

BY THE COURT:


S/J. CURTIS JOYNER
J. CURTIS JOYNER, J