```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA


KEVIN O. RICE,                       :
                                     :
            Plaintiff,               :   CIVIL ACTION
                                     :
     vs.                             :   No. 05-cv-6075
                                     :
GARY REYNOLDS, M.D.;                 :
P.A. ZORILLA; P.A. MARTINEZ;         :
P.A. BOKHARI; TROY LEVI;             :
and THE FEDERAL BUREAU OF PRISONS,   :
                                     :
            Defendants.              :
```

## MEMORANDUM and ORDER

Joyner, J.                                        March 25, 2009

Before this Court is Defendant Dr. Gary Reynold's Motion to Dismiss (Doc. No. 84), Plaintiff's Response in Opposition (Doc. No. 88), and Defendants' Reply thereto (Doc. No. 93).  For the reasons set forth in the following memorandum, the motion is granted in part and denied in part.

## Background[1]

Plaintiff, at the time in question, was a inmate with the Federal Bureau of Prisons, currently held at the Federal Detention Center ("F.D.C.") in Philadelphia, PA.  Currently,

---

[1] As this is a motion to dismiss, we will view the facts in the light most favorable to the non-moving party. Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  Additionally, it should be noted that the Second Amended Complaint incorporated all allegations from the Original Complaint.  Hence, the facts alleged by plaintiff are encompassed in the Original Complaint and the Second Amended Complaint.  However, plaintiff has also submitted a document entitled "A Statement of Facts Not Believed to Be in Dispute."  As this is a motion to dismiss, this Court looks only to the pleadings and documents "integral to or explicitly relied upon in the Complaint."  In re Rockefeller Sec. Lit., 184 F.3d 280, 287 (3d Cir. 1999).  Thus, the "Statement of Facts" submitted separately will not be considered in rendering judgment on the Motion to Dismiss.

1

plaintiff is incarcerated at FCI Schuylkill in Minersville, Pennsylvania.  Defendant Dr. Gary Reynolds, M.D. ("Dr. Reynolds"), was employed as a physician by the BOP at the time of the Plaintiff's allegations.  Plaintiff has also alleged violations against P.A. T. Zorilla, P.A, Martinez, P.A. Bohari, Warden Troy Levi and the Federal Bureau of Prisons; however, the instant Motion to Dismiss has been brought only by Dr. Reynolds in his individual capacity.[2]  In this Bivens action, plaintiff has alleged violations of the First, Fifth and Eighth Amendments in connection to the medical treatment he received at the F.D.C.[3]

In December of 2004, plaintiff fell while getting down from the top bunk of his bed, injuring his leg and back and causing him great pain.  On that same day, he told a corrections officer of his pain and put in a sick call slip.  That night, the pain worsened and Mr. Rice called the shift corrections officer who informed him that he would have to wait until the next day to receive medical care.  The following day, Mr. Rice was not seen, though he had placed his name on the call out sheet for sick call.  Several days went by and Mr. Rice told another corrections officer of the injury and the pain, but was told that he could

---

[2] Claims against all defendants in their official capacities were dismissed.  See Rice v. Reynolds, No. 05-6075 (E.D. Pa. March 17, 2009) (Order dismissing claims against defendants in their official capacities).  The remaining defendant have filed a separate Motion to Dismiss.

[3] While plaintiff alleges violations of 42 U.S.C. § 1983, this Court treats the violations as those under Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), as the defendants are not state, but federal actors.  See Egervary v. Young, 366 F.3d 238, 246 (3d Cir. 2004).

not see anyone until after the holiday weekend.  Later, when walking back to the visitation area after a visit, his leg gave out.  A Unit Counselor and a Unit Manager saw him on the floor and told him that they would call the hospital.  Later that day, he was seen by Dr. Reynolds for the first time.  Dr. Reynolds spent approximately five (5) minutes with him and told him he had to get to a New Year's Eve party.  Dr. Reynolds told Mr. Rice that he might have a pulled muscle and wrote out an idle slip and a lower bunk slip.  He also wrote Mr. Rice a prescription for 400 mg Ibuprofen.

   When Mr. Rice returned to his Unit, he could not receive a bottom bunk because the Unit Counselor was not there and could not receive the pain medication because the pharmacy was closed until the next week due to the holiday.  Mr. Rice received a lower bunk three or four days later and his pain medication approximately one week later.  Mr. Rice was also given the use of a wheelchair during this time.  During the week after the exam, Mr. Rice was in severe pain and he asked his cell mate to press the emergency call button on a number of occasions.  In early January 2005, while Mr. Rice was showering, his leg gave out and he was knocked to the floor.  He was screaming in pain and a Physician Assistant ultimately called Dr. Reynolds at home who told the P.A. to inject Mr. Rice with 30 cc of cortisone.  The shot helped for a brief period of time, but then wore off,

leading Mr. Rice to again push the emergency call button.

The next day, P.A. Smith came to Mr. Rice's cell because Mr. Rice could not get out of bed. Mr. Rice informed P.A. Smith that he could not even get out of bed to use the toilet and was urinating into an empty milk container. Later that evening, P.A. Smith gave Mr. Rice 2 Tylenol codeine 3 for the pain. The following day, Mr. Rice was still experiencing pain and P.A. Smith visited again and gave Mr. Rice pain medication.

The next day, Mr. Rice was still experiencing a lot of pain and pressed the emergency button. Dr. Reynolds came to Mr. Rice's cell, along with Mr. Freeman, Unit Counselor. Once there, Dr. Reynolds took away the wheelchair and told Mr. Rice to get out of bed. When Mr. Rice told him that he could not due to the pain, Dr. Reynolds told him that he had to get out of bed or would receive an incident report and be placed in the special housing unit. When Mr. Freeman attempted to help Mr. Rice get out of bed, he was stopped by Dr Reynolds. While Mr. Rice attempted to pull himself out of bed, he was crying and complaining fo the pain. Dr. Reynolds then told Mr. Rice to put on his jumpsuit and when Mr. Rice told Dr. Reynolds that it would be too painful, Dr. Reynolds threatened again to put him in the special housing unit. Eventually, Mr. Rice was able to put on the jumpsuit and get into a wheelchair to go to the examination room. Once there, Dr. Reynold told Mr. Rice to get on the weigh

4

scale and then pulled him out of the wheelchair onto the scale when Mr. Rice protested due to pain.  Dr. Reynolds then asked for an x-ray of plaintiff's right leg.  Ms. Macalusco performed the x-ray.  Dr. Reynolds then took plaintiff's wheel chair, gave him crutches and kept him on the same medication despite plaintiff's request to change.  For much of January 2005, plaintiff submitted sick call requests and, finally, wrote the Acting Warden.  A few days later he was brought to the exam room and was examined by P.A. Zorilla and P.A. Martinez.  Martinez changed his pain medication to Indomethacin 50 mg.  For the next month, plaintiff continued to experience pain and submitted numerous sick call requests.  In February 2005, plaintiff submitted an administrative remedy (BP 8) to his Unit Counselor concerning the pain and his lack of treatment.  No changes were made.

   In March 2005, Mr. Rice saw a P.A. who changed his medication to Naproxein 50 mg.  In April 2005, plaintiff again saw Dr. Reynolds and told him about the continued pain and headaches that plaintiff had been having.  Dr. Reynolds took plaintiff's blood pressure and, finding that it was high, changed plaintiff's medication to Acetaminophen 500 mg, explaining that the Naproxein could be responsible for the high blood pressure.  Dr. Reynolds then told the plaintiff that he had a really bad pulled muscle or nerve damage and that he was recommending "Electro-Diagnostic" testing.  Plaintiff conintued to have pain

after the visit and continued to submit sick call requests. Plaintiff was seen by P.A. Bochari in May 2005 and was told that he would have to deal with the pain and that there was nothing he could do.

Finally, plaintiff saw Dr. Reynolds in July of 2005.  At this time, plaintiff's crutches were taken away before the examination.  Plaintiff explained that he was still in pain and could not get around without the supports.  Plaintiff then told Dr. Reynolds that he had never received the electro-diagnostic testing that had been ordered.  Dr. Reynolds told plaintiff that he was malingering and that if he fell without the crutches that he would get an incident report and be put in the special housing unit.  Mr. Freeman came into the room and was told the Mr. Rice could not have the crutches and that if he fell, he was to go to the special housing unit.  Mr. Rice then left the examination room by holding onto the walls for support.  A few days later, Mr. Rice's leg gave out during lunch time at the Unit Open House in front of staff members and the Assistant Warden.  Mr. Rice was told by P.A. Martinez that someone would look into his injury and crutches situation, but has not heard back.  Mr. Rice pursued administrative remedies as to the lack of medical treatment through July 2005, after first filing on February 22, 2005, and has been told that the medical treatment was sufficient.

On December 16, 2005, plaintiff filed his Complaint pro se

and then sought, and secured, appointment of counsel from the Civil Rights Panel of the Eastern District of the United States. Counsel was appointed by Order on January 11, 2006.  Plaintiff was taken to Frankford Hospital on August 15, 2006, for electro-diagnostic testing where he was preliminarily found to be suffering from a possible right S1 radiculpathy.  The physician there recommended further studies and tests which were not immediately performed.  Following an application from counsel and Order from this Court, the plaintiff was examined on or about August 8, 2007, by Dr. Marc Kahn, M.D., an orthopaedic specialist in Cherry Hill, N.J.  Dr. Kahn preliminary diagnosed plaintiff with a chronic lumbar strain and sprain and an internal derangement of his right knee.  Dr. Kahn also recommended MRI and EMG testing to properly diagnose his injury and determine a course of treatment.  The BOP was made aware of this report but did not provide follow up testing.

On October 4, 2007, this Court ordered that the MRI and EMG tests be performed.  The MRI was performed at Thomas Jefferson University Hospital; however, the hospital would not release the results of the MRI without an assurance of payment from the BOP. Similarly, the hospital would not perform the EMG test without such assurance.  The BOP has contested the necessity of a court order to pay for such tests, asserting that it has adequate facilities for such tests itself.  The BOP has not, thus far,

performed such tests.

The Second Amended Complaint was filed in this matter on June 3, 2008. Dr. Reynolds now moves to dismiss the claims against him only; the plaintiff has responded in opposition. This Court has jurisdiction over this action pursuant to 13 U.S.C. § 1331, as this action arose under the U.S. Constitution.

## Standard

In response to a pleading, under Federal Rule of Civil Procedure 12(b)(6), a Defendant may assert by motion that the Plaintiff's complaint "[fails] to state a claim upon which relief can be granted."  In analyzing a Rule 12(b)(6) motion to dismiss, we "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citations omitted). "To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level . . . .'" Id. at 232 (quoting Bell Atl. Corp. v. Twombley, 127 S. Ct. 1955, 1965, 167 L. Ed. 929, 940 (2007)).  In other words, the plaintiff must provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a particular cause of action.  Id. at 234.  In ruling on a Rule 12(b)(6) motion to dismiss, the court may

8

consider documents "integral to or explicitly relied upon in the complaint." In re Rockefeller Sec. Lit., 184 F.3d 280, 287 (3d Cir. 1999).

## Discussion

### I. Eighth Amendment Claim

The Eighth Amendment "requires prison officials to provide basic medical treatment to those [] incarcerated." Anderson v. Bureau of Prisons, 176 Fed. Appx. 242, 243 (3d Cir. 2006) (quoting Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)). It is well-settled that, "[o]nly 'unnecessary and wanton infliction of pain' or 'deliberate indifference to the serious medical needs' of prisoners are sufficiently egregious to rise to the level of a constitutional violation." Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (quoting White v. Napoleon, 897 F.2d 103, 108-09 (3d Cir. 1990) (quoting Estelle v. Gamble, 429 U.S. 97, 103, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976))). A claim of medical malpractice is not sufficient for a Constitutional violation and, thus, negligence on the part of a physician will not be considered a Constitutional deprivation. Spruill, 372 F.3d at 235 (citing White, 897 F.2d at 108-09; Estelle, 429 U.S. at 106; Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987). Finally, "'mere disagreement as to the proper treatment' is also insufficient." Spruill, 372 F.3d at 235 (quoting MCCII, 834 F.2d at 246

(citations omitted)).  Hence, the standard set out in Estelle to assess medical treatment claims under the Eighth Amendment "requires deliberate indifference on the part of the prison officials and it requires the prisoner's medical needs to be serious."  Spruill, 372 F.3d at 235-236 (quoting White, 897 F.2d at 109).

**A. Severity of Plaintiff's Medical Need**

To state a claim under the Eighth Amendment, plaintiff must allege a "serious" medical need.  Id.  Plaintiff alleges that his back injury is sufficiently serious to give rise to his Eighth Amendment claim.  He asserts that, in reaction to the pain, he spent many days in his bed, used a milk container for urination for multiple days because he could not get out of bed, could not walk without the aid of a crutch, collapsed in the hallway, the shower and the lunch room, and suffered immense, untreated pain for months.  He further alleges that this condition has led to permanent injury.  Additionally, he has been preliminarily diagnosed by Dr. Kahn, following an Order from this Court, with a chronic lumbar strain and sprain, as well as an internal derangement of his right knee.[4]  Defendant argues that the back injury is not serious enough to meet the standard laid out.  In Spruill, the plaintiff suffered serious back pain similar to the condition that plaintiff alleges in this case and was allowed to

---

[4] Dr. Kahn also ordered MRI and EMG testing for diagnosis and treatment.

proceed with his claim based on his allegations.  372 F.3d at 236.  Based on Mr. Rice's description of the pain, the numerous emergency calls, the numerous sick call requests, Mr. Rice's inability to walk and get out of bed, the three falls, and the accounts of screaming and crying, we find that, similar to the plaintiff in Spruill, Mr. Rice has alleged a serious injury, satisfying this prong of the standard.

**B. Deliberate Indifference**

Dr. Reynolds must also have demonstrated deliberate indifference towards Mr. Rice, a subjective component.  Most apt to the present scenario, the Third Circuit has held that there is deliberate indifference "where 'knowledge of the need for medical care [is accompanied by the] . . . intentional refusal to provide that care.'" Spruill, 372 F.3d at 235 (quoting MCCII, 834 F.2d at 346 (quoting Ancata v. Prison Health Servs., 769 F.2d 700, 704 (11th Cir. 1985))).  The Court held that "'the threat of tangible residual injury' can establish deliberate indifference." Spruill, 372 F.3d at 237 (quoting MMII, 834 F.2d at 346).

Dr. Reynolds contends that over several months, he saw Mr. Rice four times, prescribed him pain medication, issued him a lower bunk slip and an idle slip, and ordered electro-diagnostic testing and x-rays.  Additionally, Dr. Reynolds prescribed a cortisone shot for Mr. Rice, changed his pain medication due to blood pressure concerns and ordered x-rays of his leg.  Dr.

Reynolds actions in December 2004 up until the incident on July 2005 do not sufficiently support deliberate indifference because Dr. Reynolds did provide some treatment and did not ignore Mr. Rice's injury.  See Coleman v. Frame, 843 F.Supp. 993, 994 (E.D.Pa. 1994).  By providing multiple pain medication prescriptions, the lower bunk slip and the idle slip, Dr. Reynolds was addressing plaintiff's injury, even if plaintiff disagreed with Dr. Reynold's treatment choices.  See Gerber v. Sweeney, 292 F.Supp.2d 700, 709 (E.D.Pa. 2003).  Further, while plaintiff alleges that he did not receive the medication or the lower bunk until days after Dr. Reynolds first prescribed them, he does not allege any wrongdoing on behalf of Dr. Reynolds in this regard.  Additionally, plaintiff has not alleged any personal wrongdoing on behalf of Dr. Reynolds related to the reported delayed in testing.  These actions taken together, assuming that all of plaintiff's factual allegations are true, do not state a claim for deliberate indifference, as plaintiff has not alleged that Dr. Reynolds knew of the injury and intentionally refused to provide care during that time.

 However, Mr. Rice has alleged that during a July 2005 exam Dr. Reynolds "took away [his] crutches before he even examined [him]."  Pl. Orig. Comp., 8.  Plaintiff then alleges that he told Dr. Reynolds the amount of pain that he was in, that he could not walk without the crutch and that he would "fall on [his] face

12

without something for support." Id.  Mr. Rice alleges that he asked Dr. Reynolds why he had not received the testing ordered for him months previously but received no answer. Id.  Finally, plaintiff alleges that Dr. Reynolds told him that he was malingering and took the crutches away from him, threatening to send him to the special housing unit if he fell down. Id. Mr. Rice alleges that he left the room "holding onto the walls for support" and that a few days later his leg gave out in the lunch room. Id.  Thus, while Dr. Reynold's alleged actions prior to July 2005 do not sufficiently state deliberate indifference, his actions during his July 2005 exam as alleged by Mr. Rice plead facts sufficient to sustain the deliberate indifference prong. Clearly Dr. Reynolds knew of plaintiff's injury, as he had diagnosed it and ordered electro-diagnostic testing.  However, without the testing or other indicators, Dr. Reynolds took away plaintiff's crutches and forced him to leave, threatening to send him to the special housing unit.  Without making any finding as to the facts, we find that Mr. Rice has alleged deliberate indifference as to Dr. Reynold's actions in refusing to treat plaintiff in July 2005, potentially causing future injury. Hence, Defendant's motion to dismiss as to Plaintiff's Eighth Amendment Claim is denied.[5]

---

[5] Defendant argues that he should be protected by qualified immunity in his position as a prison official. See Cleavinger v. Zaxner, 474 U.S. 193, 206 (1985).  To determine the existence of qualified immunity, the court asks first whether "the facts alleged show the officer's conduct violation a constitutional right[.]" Saucier v. Katz, 533 U.S. 194, 201 (2001) (citing Seigert v. Gilley, 500 U.S. 226, 232 (1991)).  If so, then the court asks whether the

13

**II. Fifth Amendment Claim**

Plaintiff alleges Fifth Amendment Substantive Due Process claims specifically in relation to the treatment given to plaintiff as described in Part I addressing the Eighth Amendment allegations.  Defendant asserts that, pursuant to Albright v. Oliver, 510 U.S. 266 (1994), substantive due process claims are not proper when "a particular provision of the Bill of Rights is directly applicable to the claim."  Goldhaber v. Higgins, 2007 U.S. Dist. LEXIS 72892, at *99-100 (W.D.Pa. September 28, 2007).  We agree.  Plaintiff's claims under the Fifth Amendment claims appear to concern only his medical care, the same issues that are addressed specifically in his Eighth Amendment claim.  Thus, defendant's motion to dismiss as to plaintiff's Fifth Amendment claim against Dr. Reynolds is granted and the claim is dismissed.

**III. First Amendment Claim**

The crux of plaintiff's First Amendment claim against Dr. Reynolds is an allegation that prison officials transferred him to BOP facilities in Oklahoma and West Virginia in retaliation for his complaints concerning his medical care.  Defendant argues that as a physician, Dr. Reynolds was not involved with any of the transfers and that Plaintiff has not alleged that Dr.

---

constitutional right was "clearly established . . . in light of the specific content of the case[.]" Id.  As we have determined that, viewing the facts in the light most favorable to defendant, Dr. Reynolds demonstrated deliberate indifference towards Mr. Rice during July 2005 when he refused treatment, we find that a reasonable official would have understood "that what he [was] doing violate[d] that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987).

Reynolds had played any part in the transfers.[6]  The Third Circuit in  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988), stated that "a defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." (quoting Parratt v. Taylor, 451 U.S. 527, 537 n.3 (1981)).  As plaintiff has not alleged that Dr. Reynolds had any personal involvement in the transfers, his First Amendment claim against Dr. Reynolds must fail.  Accordingly, defendant's motion to dismiss is granted as to plaintiff's first amendment claim.

---

[6]Defendant also alleges that plaintiff has not exhausted his administrative remedies, as required by Prison Litigation Reform Act ("PLRA").  See 42 U.S.C. §1997e(a).  However, as we have decided that plaintiff has not stated a claim against Dr. Reynolds for a First Amendment violation, we do not reach the issue of exhaustion.

```
             IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA


KEVIN O. RICE,                         :
                                       :
          Plaintiff,                   :    CIVIL ACTION
                                       :
     vs.                               :    No. 05-cv-6075
                                       :
GARY REYNOLDS, M.D.;                   :
P.A. ZORILLA; P.A. MARTINEZ;           :
P.A. BOKHARI; TROY LEVI;               :
and THE FEDERAL BUREAU OF PRISONS,     :
                                       :
          Defendants.                  :
```

## ORDER

AND NOW, this  25th  day of March, 2009, upon consideration of Defendant Dr. Gary Reynold's Motion to Dismiss (Doc. No. 84), Plaintiff's Response in Opposition (Doc. No. 88), and Defendant's Reply thereto (Doc. No. 93), it is hereby ORDERED that the Motion is GRANTED IN PART and DENIED IN PART as follows: Defendant's Motion to Dismiss is GRANTED as to Plaintiff's First and Fifth Amendment Claims against Defendant Dr. Reynolds and these Claims are DISMISSED.  Defendant's Motion to Dismiss is DENIED as to Plaintiff's Eighth Amendment claim.

                                        BY THE COURT:


                                        s/J. Curtis Joyner
                                        J. CURTIS JOYNER, J